IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | |
|---|---|
| **FBB IP LLC,** | |
| Plaintiff, | |
| v. | Case No. |
| **BIG BOY RESTAURANT GROUP, LLC,** | |
| Defendant. | |

### VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff FBB IP LLC ("New Frisch's"), by its attorneys, and for its Verified Complaint for Injunctive Relief against defendant Big Boy Restaurant Group, LLC ("BBRG"), states as follows:

### INTRODUCTION

1. In 2001, Frisch's Restaurants, Inc. ("Frisch's") and defendant's predecessor-in-interest negotiated an arrangement under which they each obtained the exclusive, perpetual, and irrevocable rights to operate restaurants under the name "Big Boy" and other related trademarks in distinct parts of the country. The parties represented and agreed that their use would not overlap, and the U.S. Patent and Trademark Office ("USPTO") registered the parties' concurrent use based, in part, on their agreement to operate in separate territories.

2. Since then, the parties have co-existed in their respective territories without issue. Frisch's authorized franchisees or corporate affiliates have exclusively owned and operated restaurants in Frisch's territory under Frisch's registered trademarks, including the name "Big Boy." And BBRG and its predecessors and affiliates have similarly operated restaurants in their territory under their registered trademarks, including the name "Big Boy."

{05484174-1 }

3. Frisch's recently became embroiled in a lease renegotiation dispute with a single landlord that owns the real estate on which multiple corporate-owned Big Boy restaurants operated. Rather than renegotiate the lease terms, the landlord initiated eviction proceedings and forced Frisch's to begin closing those restaurants in October 2024.

4. To save the Frisch's system from total collapse, New Frisch's and its affiliates acquired certain assets from Frisch's and its affiliates for fair market value in November 2024, including the trademarks at issue in this dispute, the franchise agreements governing the operation of franchised restaurants, and the assets of certain remaining restaurants. New Frisch's and its affiliates intend to continue supporting existing restaurants—including saving hundreds of jobs, funding the employee pension plan, and providing healthcare benefits—and rebuild the number of restaurants within Frisch's territory.

5. Unfortunately, BBRG has opportunistically and unlawfully seized on Frisch's hard times as a pretext to ignore New Frisch's federally protected trademark rights to exclusively operate restaurants within Frisch's territory under the Big Boy name. BBRG seeks to reopen the restaurants recently closed by Frisch's, in what is now New Frisch's exclusive territory, under BBRG's confusingly similar Big Boy name. Because the USPTO based its approval of the parties' concurrent use registration on their agreement not to use their trademarks within each other's territory, BBRG's unlawful conduct, if not stopped, would result in the cancellation of New Frisch's trademark rights and complete demise of the New Frisch's system. BBRG intends to begin reopening restaurants under the name Big Boy by March 2025.

6. Contemporaneously with filing this lawsuit, New Frisch's has filed an arbitration demand with the American Arbitration Association ("AAA") under the mandatory arbitration provision contained in the parties' agreement governing the use of their trademarks. It brings this

action under an express carveout to that arbitration provision and seeks an emergency TRO and preliminary injunction prohibiting defendant, its officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with any of them from infringing on New Frisch's federally registered marks in violation of the Lanham Act.

## PARTIES

7. Plaintiff New Frisch's is a Delaware limited liability company with its headquarters in Atlanta, Georgia.

8. Defendant BBRG is a Michigan limited liability company with its headquarters in Southfield, Michigan.

## JURISDICTION AND VENUE

9. The Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338 in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks.

10. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district. Defendant also expressly agreed in writing that any action between the parties could be brought in this Court, and it irrevocably consented and waived any objection to jurisdiction of and venue in this Court.

## BACKGROUND FACTS

**A. Defendant irrevocably transferred ownership of the Big Boy Marks within the Frisch's Territory to Frisch's.**

11. "Big Boy" branded restaurants began in 1936 when the founder opened a ten-seat diner in Glendale, California where he pioneered the double-decker hamburger that he called the "Big Boy."

12. In 1952, members of the Elias family became the first Big Boy franchisees when they obtained from the founder the right to develop and operate franchised Big Boy restaurants in the state of Michigan.

13. The Marriott Corporation ("Marriott") acquired the Big Boy franchise system from the founder in 1972.

14. Fifteen years later, Marriott sold the franchise system to the Elias family.

15. The Elias family, through their entity Elias Brothers Restaurants, Inc. ("Elias Brothers") owned and operated the Big Boy franchise system until filing for bankruptcy in 2000.

16. In late December 2000, Liggett Restaurant Enterprises LLC and its affiliates (collectively, "Liggett") purchased the Big Boy franchise system and the rights to certain federally registered trade names, trademarks, and service marks, including U.S. Reg. Nos. 1,102,913, 1,323,533, 1,344,662, 910,244, 1,806,061, 1,753,878, 1,871,436, 1,818,909, 910,758, 1,680,330, 1,823,393, 913,601, 935,453, 944,155, 2,059,156, 2,090,105, 2,145,671, 1,166,686, 1,230,137, 1,230,170, 1,230,569, 1,230,570, 1,300,991, 721,660, 1,568,926, 1,467,732, 1,375,215, 1,009,275, 2,233,020 (the "Big Boy Marks") from Elias Brothers, which purchase the bankruptcy court approved.

17. At the time of the purchase of the Big Boy system by Liggett, Frisch's owned exclusive franchise rights for the Big Boy brand in Indiana, Kentucky, Ohio (other than the counties of Cuyahoga, Lorain, Medina, Summit, Portage, Geauga, and Lake), and Tennessee (other than the counties of Anderson, Blount, Campell, Claiborne, Cocke, Cumberland, Fentress, Grainger, Hamblen, Hancock, Jefferson, Knox, Loudon, Monroe, Morgan, Roane, Scott, Sevier, and Union) (the "Frisch's Territory").

18. Frisch's and Liggett agreed to permanently separate their operations going forward, with Liggett, among other things, transferring ownership of the Big Boy Marks to Frisch's within the Frisch's Territory.

19. To effectuate their separation, Frisch's and Liggett entered into three agreements of even date: (i) Transfer Agreement dated January 12, 2001 ("Transfer Agreement"); (ii) Limited Concurrent Use Agreement dated January 12, 2001 ("Limited Concurrent Use Agreement"), and (iii) Intellectual Property Use and Non-Compete Agreement dated January 12, 2001 (the "IP Use Agreement") (collectively, the "2001 Agreements").

20. First, the Transfer Agreement provides that at the closing (i) "Liggett shall convey to Frisch's ***complete, absolute, perpetual and irrevocable*** ownership of the Big Boy [Marks] within Frisch's [Territory]" and (ii) "Liggett shall retain complete, absolute, perpetual and irrevocable ownership of the Big Boy [Marks] outside of Frisch's [Territory]." (emphasis added). Critically, this provision contains no conditions limiting either party's absolute, perpetual, and irrevocable ownership of the Big Boy Marks within their respective territories.

21. Second, the Limited Concurrent Use Agreement consists of a single paragraph requiring Liggett to assist and cooperate with Frisch's efforts to obtain concurrent use registration of the Big Boy Marks within the Frisch's Territory from the USPTO.

22. Third, under the IP Use Agreement, the parties covenanted and warranted that they would use the Big Boy Marks in a manner which will not materially detract from the Big Boy reputation. Specifically, in connection with the operation of the restaurants, the parties agreed to:

    a. use the Big Boy Marks in a manner which is substantially consistent with the past use of the marks;

{05484174-1 }  5

  b. operate the restaurants and prepare and sell all products sold therein in a manner so as to maintain the reputation of the brand;

  c. maintain and operate restaurants in good condition and repair;

  d. prominently display the Big Boy Marks on the restaurants; and

  e. not permit gambling or other adult themes or activities or adult atmosphere (such as a "Hooters" type restaurant or staff dress).

23. The IP Use Agreement contains no requirement that either party operate a minimum number of restaurants or maintain a minimum level of presence within their respective territories.

24. On the contrary, for purposes of allocating costs of defending against third-party attacks on the Big Boy Marks, the IP Use Agreement expressly acknowledges that the number of restaurants operated by the parties may "increase or decrease."

25. The IP Use Agreement contains a mandatory arbitration provision that requires the parties to submit "all disputes arising under, or relating to the interpretation of, this Agreement, including without limitation all disputes concerning the use of the Big Boy [Marks]" to final and binding arbitration before the AAA in accordance with the AAA's commercial arbitration rules.

26. The arbitration provision permits courts to grant interim equitable relief in aid of arbitration.

27. Before invoking arbitration for a breach of contract claim, the IP Use Agreement requires the complaining party to notify the breaching party of any alleged defaults in writing. If the breaching party fails to cure within thirty days, or such longer period if reasonable under the circumstances, then the IP Use Agreement permits the complaining party to proceed with arbitration.

28. The IP Use Agreement contains no provision allowing either party to terminate the agreement even if the other party breaches that agreement. On the contrary, the agreement prohibits arbitrators and courts from even narrowing the scope of the other party's rights to the Big Boy Marks: "In no event shall the [complaining party] be entitled to relief which narrows the scope of the rights of the [breaching party], under this Agreement, to use the Big Boy [Marks]."

**B.  The USPTO registered Frisch's exclusive right to use the Big Boy Marks within the Frisch's Territory.**

29. Concurrent use registrations are rare, and Frisch's expended considerable effort and resources to ultimately obtain such registration of the Big Boy Marks with the USPTO.

30. On April 4, 2002, Frisch's submitted a concurrent use application (U.S. Application No. 76/391,539) for registration of the standard character "Big Boy" service mark in the Frisch's Territory.

31. On December 16, 2003, the USPTO registered Frisch's standard character "Big Boy" service mark (U.S. Reg. No. 2,793,807).

32. On February 15, 2006, the USPTO cancelled that registration and explained that a clerical error had resulted in approval without required concurrent use proceedings before the Trademark Trial and Appeal Board ("TTAB").

33. On November 22, 2006, the USPTO instituted concurrent use proceedings (Concurrent Use Proceeding No. 94002189).

34. On November 7, 2007, Frisch's and Liggett's successor (and defendant BBRG's predecessor) to the 2001 Agreements, Big Boy Restaurants International, LLC ("BBRI"), entered into an Agreement Regarding Use of Trademarks dated November 7, 2007 (the "2007 Agreement").

35. The 2007 Agreement reaffirmed the 2001 Agreements and again provided that each party could only advertise or use the Big Boy Marks in their respective territory and only for their respective goods and services (the 2007 Agreements and 2001 Agreements are collectively, "the Concurrent Use Agreements"). Frisch's filed a motion for TTAB to accept the Concurrent Use Agreements and dismiss the concurrent use proceedings.

36. On August 11, 2009, TTAB accepted the Concurrent Use Agreements and determined that "concurrent use by the parties of their involved marks will not, in fact, be likely to cause confusion." Critical to TTAB's decision was the parties' representation that "neither party will use or advertise its marks in the other party's territory."

37. On August 18, 2009, the Commissioner of the USPTO entered an order restricting BBRI's registration of the Big Boy Marks to the United States except for the Frisch's Territory.

38. The order further held that Frisch's was entitled to concurrent use registration of the "Big Boy" standard character mark under Class Nos. 30 (tartar sauce and pies) and 043 (restaurant, drive through, and carryout services) in the Frisch's Territory.

39. Consistent with the USPTO's order, on October 6, 2009, Frisch's obtained registration of the "Big Boy" standard character mark on the Principal Register under Class Nos. 030 (tartar sauce and pies) and 043 (restaurant, drive through, and carryout services) in the Frisch's Territory (USPTO Reg. No. 3,690,889) and has since obtained registration of several related trademarks in the Frisch's Territory (including USPTO Reg. Nos. 4,026,143, 5,421,398, 5,373,176, 6,348,451, 5,373,179, 6,615,727, 5,984,556, 6,010,714, and 5,373,175) (collectively, the "Frisch's Big Boy Marks.")

40. Defendant's registrations for their Big Boy Marks expressly exclude the Frisch's Territory. (*See, e.g.*, USPTO Reg. Nos. 910,758, 913,601, 1,166,686, 1,818,909, 1,823,393, 2,090,105, and 5,235,105.)

C. **Frisch's has continuously, exclusively, and extensively used the Frisch's Big Boy Marks in the Frisch's Territory.**

41. For decades before and since Frisch's obtained registration of the Frisch's Big boy Marks, Frisch's and its authorized franchisees and licensees have continuously, exclusively, and extensively used the Frisch's Big Boy Marks in the Frisch's Territory to identify the source, origin, and sponsorship of the products and services provided under those marks and distinguish them from those established, offered, and sold by others.

42. The Frisch's Big Boy Marks are registered on the Principal Register of the USPTO.

43. The registration of Frisch's Big Boy Marks continues in full force and effect.

44. Frisch's has given notice to the public of the registration of the Frisch's Big Boy Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that it and its authorized franchisees and licensees remain the exclusive users of the Frisch's Big Boy Marks in the Frisch's Territory.

45. Frisch's and its authorized franchisees and licensees have continuously used the Frisch's Big Boy Marks in interstate commerce in connection with the operation of Frisch's Big Boy restaurants and the promotion, offer, and sale of the products and services that they offer in the Frisch's Territory.

46. Frisch's and its authorized franchisees and licensees have extensively advertised and promoted the Frisch's Big Boy Marks and the products offered in association with those marks throughout the Frisch's Territory and through various media. As a result of such efforts and the substantial amounts spent in connection therewith, the products and services offered by Frisch's

and its franchisees and licensees under the Frisch's Big Boy Marks have been met with widespread public approval and have established demand and goodwill among consumers throughout the Frisch's Territory.

**D. Defendant intends to imminently open restaurants in the Frisch's Territory under the Big Boy Marks.**

47. In 2016, a private investor acquired all shares of Frisch's. As a result of that transaction, Frisch's IP LLC ("Frisch's IP") acquired Frisch's intellectual property, including the then-existing Frisch's Big Boy Marks. Frisch's IP licensed use of the Frisch's Big Boy Marks to affiliate entities (including Frisch's) that either (i) used the trademarks in connection with the operation of corporate-owned restaurants or (ii) sublicensed them, in turn, to authorized franchisees for the operation of franchised restaurants (Frisch's, Frisch's IP, and its affiliates are collectively referred to as the "FRI Entities").

48. In connection with the 2016 transaction, National Retail Properties LP ("NNN") became the owner of the real estate and lessor for many corporate-owned Frisch's Big Boy restaurants under a master lease (the "Lease").

49. Beginning in 2020, the global COVID-19 pandemic disproportionately devastated the financial performance of dine-in restaurants.

50. In the aftermath of the pandemic, the commercial real estate market has experienced a significant re-calibration with landlords and tenants renegotiating commercial leases across various industries.

51. Frisch's had been embroiled in a renegotiation dispute with NNN over the inflated and unfair Lease terms imposed on it in a post-pandemic world.

52. Rather than renegotiate, NNN recently commenced eviction proceedings to force Frisch's to abandon the operation of all restaurants under the Lease.

53. To save the Frisch's system from total collapse, New Frisch's and its affiliates acquired certain assets from the FRI Entities for fair market value, including the trademarks at issue in this dispute, the franchise agreements governing the operation of franchised restaurants, and the assets of certain remaining restaurants not forced to close.

54. New Frisch's now owns the Frisch's Big Boy Marks and licenses their use to authorized franchisees and licensees under written agreements in connection with the operation of Frisch's Big Boy restaurants. These restaurants continue to operate under the Frisch's Big Boy Marks throughout the Frisch's Territory, including in Cincinnati, Ohio.

55. On November 8, 2024, New Frisch's notified BBRI that it had bought Frisch's interest in the Concurrent Use Agreements and ownership of the Frisch's Big Boy Marks.

56. On November 11, 2024, BBRG responded to New Frisch's notice (informing New Frisch's that BBRG had acquired BBRI's interest in the Concurrent Use Agreements). BBRG accused Frisch's of breaching the Concurrent Use Agreements, claiming that the closure of restaurants in the Frisch's Territory would somehow damage BBRG's Big Boy Marks and reputation in BBRG's separate territory and entitle BBRG to terminate the Concurrent Use Agreements.

57. On November 27, 2024, New Frisch's refuted BBRG's allegations through a written letter, which explained, among other things, that BBRG, or its predecessors, had similarly closed numerous restaurants and engaged in conduct that reflects poorly on their reputation, yet Frisch's had never sought to terminate the parties' absolute, perpetual, and irrevocable agreements. Indeed, the number of BBRG Big Boy restaurants decreased from 159 in 2001 to 53 at present, and during that same time period, BBRG has ceased operating entirely in at least five states.

58. By late December 2024, Frisch's had closed all restaurants previously operated under the Lease (the "Closed Restaurants").

59. On December 27, 2024, BBRG informed New Frisch's that BBRG interpreted the Concurrent Use Agreements to provide New Frisch's with a "conditional" right to use the Frisch's Big Boy Marks even though, among other reasons, (i) Section 1 of the Transfer Agreement plainly states that such transfer is "absolute, perpetual, and irrevocable" and (ii) Section 10 of the IP Use Agreement precludes a court or arbitrator from awarding relief which narrows the scope of either party's right to use their respective marks.

60. Upon information and belief, the reason that NNN had refused to renegotiate the Lease and instead initiated eviction proceedings regarding the Closed Restaurants was that NNN and BBRG had already agreed that BBRG would enter the Frisch's Territory to reopen the Closed Restaurants under the name "Big Boy" in violation of the Concurrent Use Agreements and the Lanham Act.

61. According to online employment advertisements, BBRG initially intended to rebrand the Closed Restaurants as "Dolly's Burgers and Shakes."

62. The character Dolly has existed in the Big Boy universe for decades (she is the Big Boy character's girlfriend). BBRG has a separate trademark registration for "The Dolly Chicken Sandwich," which was registered in 2021, and neither Frisch's nor New Frisch's has ever used that trademark.

63. Accordingly, New Frisch's refrained from seeking relief from this Court based on its understanding that BBRG would reopen the Closed Restaurants under a different name.

64. But last week, New Frisch's learned that BBRG would be reopening the Closed Restaurants under the name "Big Boy."

65. Online job postings now no longer seek employees for "Dolly's Burgers and Shakes" but for "Big Boy" restaurants.

66. An investigator hired by New Frisch's recently applied for a BBRG job opening for one of the Closed Restaurants.

67. During the pre-screening interview with BBRG's Human Resources Manager, Tom Guajardo, Mr. Guajardo informed the investigator that BBRG will be reopening all the Closed Restaurants under the name "Big Boy." Mr. Guajardo further advised that BBRG intended to implement management teams by mid-February, hire hourly staff by the end of February, and begin opening restaurants by early March.

68. Contemporaneously with filing this lawsuit, New Frisch's has initiated an arbitration demand with the AAA under the Concurrent Use Agreements' mandatory arbitration provision.

## COUNT I – TRADEMARK INFRINGEMENT

69. New Frisch's repeats and realleges the allegations of ¶¶ 1 through 68 of its Complaint as and for this ¶ 69, as if fully set forth herein.

70. Defendant's acts, practices, and conduct constitute an infringing use in interstate commerce of the Frisch's Big Boy Marks in the Frisch's Territory and have caused and are likely to continue to cause consumer confusion and deceive the public in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

71. Defendant's misconduct has been, and continues to be, knowing and willful.

72. As a direct and proximate result of defendant's trademark infringement, New Frisch's has suffered and, unless defendant's infringement is enjoined, will continue to suffer actual, substantial, and irreparable harm, including, without limitation, diminution in the value of

the Frisch's Big Boy Marks in the Frisch's Territory, diminution in the value of its goodwill and reputation, and incalculable lost revenues and profits.

73. New Frisch's has no adequate remedy at law because the Frisch's Big Boy Marks are unique and represent to the public in New Frisch's identity, reputation, and goodwill, such that damages alone cannot fully compensate New Frisch's for defendant's misconduct.

74. Unless enjoined by the Court, defendant will continue to use and to infringe the Frisch's Big Boy Marks in the Frisch's Territory to New Frisch's irreparable injury. This threat of future injury to New Frisch's business, identity, goodwill, and reputation requires injunctive relief to prevent defendant's continued use of the Frisch's Big Boy Marks in the Frisch's Territory, and to ameliorate and mitigate New Frisch's injuries.

## COUNT II – UNFAIR COMPETITION

75. New Frisch's repeats and realleges the allegations of ¶¶ 1 through 68 of its Complaint as and for this ¶ 75, as if fully set forth herein.

76. Defendant's acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristic, qualities, or geographic origin of the parties' services, and commercial activities, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

77. Defendant's misconduct has been, and continues to be, knowing and willful.

78. As a direct and proximate result of defendant's unfair competition, New Frisch's has suffered and, unless its infringement and unfair competition is enjoined, will continue to suffer actual, substantial, and irreparable harm, including, without limitation, diminution in the value of the Frisch's Big Boy Marks, diminution in the value of and damage to its goodwill and reputation, and incalculable lost revenues and profits.

79. New Frisch's has no adequate remedy at law because the Frisch's Big Boy Marks are unique and represent to the public Frisch's identity, reputation, and goodwill, such that damages alone cannot fully compensate New Frisch's for defendant's conduct.

80. Unless enjoined by the Court, defendant will continue to compete unfairly with New Frisch's to its irreparable injury. This threat of future injury to New Frisch's business, identity, goodwill, and reputation requires injunctive relief to prevent defendant's continued unfair competition, and to ameliorate and mitigate its injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, New Frisch's respectfully prays for the following relief:

A. An emergency TRO and preliminary injunction enjoining defendant and its respective agents, servants, and employees, and those people in active concert or participation with defendant, from:

1. Using any of the Frisch's Big Boy Marks or any trademark, service mark, logo, or trade name that is confusingly similar to the Frisch's Big Boy Marks, including, but not limited to, "Big Boy" in the Frisch's Territory;

2. Causing a likelihood of confusion or misunderstanding as to its affiliation, connection, or association with New Frisch's, its franchisees or licensees, or with any of the products and services offered by them;

3. Unfairly competing with New Frisch's or its franchisees or licensees in any manner; and

4. Otherwise infringing the Frisch's Big Boy Marks or using any similar designation, alone or in combination with any other components, in the Frisch's Territory.

B. An order that defendant file with the Court and serve upon New Frisch's counsel within ten days after entry of any injunction issued herein, a sworn written report setting forth in detail the manner in which it has complied with such injunction;

C. An order that defendant pay to New Frisch's, because of the willful nature of its infringement and unfair competition, New Frisch's reasonable attorneys' fees pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

D. Such other and further relief as the Court deems just and proper.

Dated:  February 14, 2025

Respectfully submitted,

/s/  Michael A. Galasso
Michael A. Galasso (0072470)
Robbins Kelly Patterson & Tucker, LPA
312 Elm Street, Suite 2200
Cincinnati, OH 45202
(513) 721-3330 | (513) 721-5001 fax
magalasso@rkpt.com

-and-

Aaron-Michael Sapp (*pro hac vice forthcoming*)
Charles J. Hoover (*pro hac vice forthcoming*)
CHENG COHEN LLC
363 West Erie Street, Suite 500
Chicago, Illinois 60654
asapp@chengcohen.com
charles.hoover@chengcohen.com

## **VERIFICATION**

I, Aziz Hashim, hereby verify and declare under penalty of perjury that I am the President and Chairman for plaintiff FBB IP LLC; that I have read the Verified Complaint for Injunctive Relief and know the contents thereof; and that the matters contained in the Verified Complaint are true to my own knowledge, except for those matters herein stated to be alleged on information and belief, and as to those matters I believe them to be true. The sources of my information and the grounds of my belief include the business records of FBB IP LLC, publicly available information, and information supplied by a licensed investigator.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of February, 2025

_____
Aziz Hashim