**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION - CINCINNATI**

| | | |
|---|---|---|
| FBB IP LLC, | : | Case No. 1:25-cv-95 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| BIG BOY RESTAURANT | : | |
| GROUP, LLC, | : | |
| | : | |
| Defendant. | : | |

---

**ORDER AND OPINION**

---

This matter is before the Court on Plaintiff's Amended Motion for Temporary Restraining Order (Doc. 9). Defendant filed a Response in Opposition (Doc. 20), to which Plaintiff filed a Reply in Support (Doc. 21). This matter is therefore fully briefed and ripe for the Court's review. For the following reasons, the Court **GRANTS** Plaintiff's Amended Motion for Temporary Restraining Order (Doc. 9).

**BACKGROUND**

This dispute centers around the respective rights of two parties to use the Big Boy name and registered marks in certain locations. Specifically, Plaintiff FBB IP LLC alleges that Defendant Big Boy Restaurant Group, LLC has been infringing its trademark rights by advertising for the imminent opening of Big Boy restaurants in locations where Plaintiff owns the Big Boy trademarks. An understanding of a few agreements, which involved the Plaintiff's and Defendant's predecessors in interest, provides necessary

context for the present matter.

Big Boy branded restaurants first opened their doors nearly a century ago in 1936. (Ver. Compl., Doc. 1, ¶ 11.) Since then, Big Boy restaurants have expanded throughout the country amid changes in ownership and franchising agreements. (*Id*. at ¶¶ 12-15.) In late 2000, Liggett Restaurant Enterprises LLC (Defendant's predecessor in interest) purchased the Big Boy franchise system and certain federally registered trademarks. (*Id*. at ¶ 16.) At the time, Frisch's Restaurants, Incorporated (Plaintiff's predecessor in interest) owned exclusive franchise rights for the Big Boy brand in Indiana, Kentucky, and select counties in Ohio and Tennessee. (*Id*. at ¶ 17.) Frisch's and Liggett agreed to separate their operations, and Liggett transferred ownership of the relevant Big Boy trademarks as they pertain to Frisch's geographic territory. (*Id*. at ¶ 18.) Frisch's and Liggett put pen to paper on January 12, 2001, when they entered into three integrated agreements to memorialize the terms of their separation: the Transfer Agreement, the Limited Concurrent Use Agreement, and the IP Use Agreement (collectively "the Agreements"). (*Id*. at ¶ 19.)

The Transfer Agreement demarcates the ownership of the Big Boy marks by geographic territories. It provides that (1) "Liggett shall convey to Frisch's complete, absolute, perpetual and irrevocable ownership of the Big Boy [Marks] within Frisch's [Territory]" and (2) "Liggett shall retain complete, absolute, perpetual and irrevocable ownership of the Big Boy [Marks] outside of Frisch's [Territory]." (Transfer Agreement, Doc. 9-2, Pg. ID 683.) This Agreement further clarifies that "Frisch's shall succeed to [Liggett's] position as franchisor within Frisch's [Territory]." (*Id*. at Pg. ID 685.)

2

The Limited Concurrent Use Agreement requires Liggett to cooperate with Frisch's efforts to obtain concurrent use registrations for the trademarks within Frisch's Territory. (Concurrent Use Agreement, Doc. 9-2, Pg. ID 699.) These efforts came to fruition in 2009 when the parties obtained concurrent use registrations from the United States Patent and Trademark Office based on each party confining its use of the Big Boy marks to its respective territory. (TTAB, Doc. 9-2, Pg. ID 772-781; Trademark Order, Doc. 9-2, Pg. ID 783-85; Concurrent Registrations, Doc. 9-2, Pg. ID 834-63.)

The IP Use Agreement governs the parties' use of the Big Boy rights in their respective territories. (IP Use Agreement, Doc. 9-2, Pg. ID 664.) It provides that the parties will not use the trademarks "in a manner which will . . . materially detract from the Big Boy reputation." (*Id.* at Pg. ID 665.) The parties agreed, for instance, that they will "maintain and operate all Big Boy restaurants in good condition and repair and in a proper and business-like manner, and use its reasonable efforts to maintain a clean, quiet, and respectable atmosphere." (*Id.*) After enumerating the conditions on each parties' use of the Big Boy rights, the Agreement continues:

> Notwithstanding the foregoing, nothing herein shall be deemed to . . . preclude or restrict Liggett in the use, promotion and application of the Big Boy Rights (to restaurant operations or otherwise) that Liggett determines in its reasonable business judgment to be in its best interest.

(*Id.*)

The Agreements also set forth conditions in resolving disputes that may arise between the parties. To begin, the parties agreed that "all disputes arising under, or relating to the interpretation of, this Agreement, including without limitation all disputes

3

concerning the use of the Big Boy Rights, shall be subject to final and binding arbitration." (IP Use Agreement, Doc. 9-2, Pg. ID 669.) But, there is an exception: "arbitration shall not preclude a Court from granting interim equitable relief while the arbitration is pending." (*Id.*) As for judicial relief, each party "consent[ed] to the jurisdiction of the Federal District Court for the Eastern District of Michigan (Detroit) and the Federal District Court Southern District (Ohio) [sic] and they each waive[d] any objection to forum or venue." (Transfer Agreement, Doc. 9-2, Pg. ID 689.) However, "[i]n no event" shall a party "be entitled to relief which narrows the scope of the rights of the [other party], under th[e] Agreement, to use the Big Boy Rights." (IP Use Agreement, Doc. 9-2, Pg. ID 669.) In terms of substantive state law, the parties agreed Michigan law would apply in construing and enforcing the Agreements. (Agreements, Doc. 9-2, Pg. ID 672, 689.)

On November 7, 2007, Frisch's and Big Boy Restaurants International, LLC (Liggett's successor and Defendant's predecessor in interest) entered into a Trademark Use Agreement to "confirm the scope and terms" of the aforementioned IP Use Agreement signed six years earlier. (Ver. Compl., Doc. 1, ¶ 34; Use Agreement, Doc. 9-2, Pg. ID 720-24.) Relevant here, the parties confirmed that Big Boy Restaurants International, LLC "will not use or advertise the Big Boy Trademark in . . . Frisch's Territory for Frisch's goods and services." (Use Agreement, Doc. 9-2, Pg. ID 723.)

The Agreements also anticipated the possibility of assignment: "Each party may assign its interests under th[e] Agreement provided that any such assignee shall also be the owner of such party's interests in the Big Boy Rights." (IP Use Agreement, Doc. 9-2, Pg. ID 673.) Written notice of any assignment must be given to the other party of the

4

Agreements. (*Id.*) Once assigned, the assignee becomes bound by the Agreements. (*Id.*; *see also* Use Agreement, Doc. 9-2, Pg. ID 724 (explaining that 2007 terms would similarly bind successors and assignees)).

In June 2016, Frisch's IP LLC (Plaintiff's direct predecessor in interest) acquired Frisch's trademarks through assignment and licensed the use of the trademarks to affiliated entities to use in connection with corporate-owned restaurants or franchised restaurants. (Ver. Compl., Doc. 1, ¶ 47; Frisch's IP Assignment, Doc. 21-1, Pg. ID 1297-1301.) After operating for decades in its territory under the Big Boy trademarks, Frisch's restaurants began closing in October 2024 when the landlord of multiple restaurants initiated eviction proceedings. (Ver. Compl., Doc. 1, ¶¶ 3, 41.) Around November 2024, Plaintiff FBB IP LLC and its affiliates acquired Frisch's IP LLC and its affiliates' assets, including the trademarks central to this dispute (along with the associated goodwill), the franchise agreements, and certain assets of the remaining restaurants, in exchange for fair market value. (*Id.* at ¶ 53; FBB IP Assignment, Doc. 21-1, Pg. ID 1308-12.) Plaintiff has also registered the trademarks in question with the United States Patent and Trademark Office. (Registrations, Doc. 9-2, Pg. ID 787-832.)

Plaintiff's franchisees and licensees currently operate thirty-one restaurants with the Big Boy mark in its territory. (Hashim Decl., Doc. 9-3, Pg. ID 872-73; Frisch's Locations, Doc. 9-3, Pg. ID 974.) Now, Defendant Big Boy Restaurant Group, LLC plans to reopen Frisch's recently closed restaurants within Plaintiff's territory under the Big Boy name by March 2025. (Ver. Compl., Doc. 1, ¶ 5; Cory Decl., Doc. 9-4, Pg. ID 980-82.) Defendant has been seeking employees to fill positions at these soon-to-be Big Boy

restaurants. (Cory Decl., Doc. 9-4, Pg. ID 980-82; Assistant Manager Posting, Doc. 9-3, Pg. ID 954; Shift Leader/Manager Posting, Doc. 9-3, Pg. ID 956.)

Plaintiff filed this Verified Complaint, as well as an arbitration demand with the American Arbitration Association, on February 14, 2025. (Ver. Compl., Doc. 1, ¶ 6.) Specifically, Plaintiff brings claims for trademark infringement and unfair competition under the Lanham Act. (*Id.* at ¶¶ 69-80.) On February 18, 2025, Plaintiff filed an Amended Motion for Temporary Restraining Order to enjoin Defendant from using the Big Boy marks in Plaintiff's territory and to preserve the status quo pending arbitration. (Motion, Doc. 9.)

## LAW AND ANALYSIS

### I.     Arbitration and the Proper Forum

Defendant raises a few preliminary matters, which the Court will address before turning to the merits of Plaintiff's request for injunctive relief. First, Defendant contends that this matter should be dismissed because only arbitration can afford complete relief. (Response, Doc. 20, Pg. ID 1046-48.) The Court agrees with Defendant's submission that the arbitrator is "entitled to conclusively adjudicate the dispute." (*Id.* at Pg. ID 1048.) But, as Defendant also recognizes, the IP Use Agreement provides a carveout in the mandatory arbitration provision: "arbitration shall not preclude a Court from granting interim equitable relief while the arbitration is pending." (IP Use Agreement, Doc. 9-2, Pg. ID 669.) This is precisely what Plaintiff is requesting here—interim injunctive relief to preserve the status quo pending arbitration. Courts frequently address requests for interim relief pending arbitration when, like here, the parties unambiguously agreed to

6

potentially seek such relief. *See, e.g., United States v. Miraca Life Scis., Inc.,* No. 3:13-CV-1025, 2021 WL 679275, at *4 (M.D. Tenn. Feb. 22, 2021); *Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.,* No. 13-CV-15189, 2014 WL 562264, at *7-8 (E.D. Mich. Feb. 13, 2014). In line with the Agreement, the Court will consider Plaintiff's request for interim equitable relief.

Next, Defendant argues that this matter should be dismissed or transferred because this is the improper forum. (Response, Doc. 20, Pg. ID 1048-49.) The Agreement's arbitration clause reads as follows:

> Unless otherwise provided, all disputes arising under, or relating to the interpretation of, this Agreement, including without limitation all disputes concerning the use of the Big Boy Rights, shall be subject to final and binding arbitration in Cincinnati, Ohio, if [Defendant] is the Complaining Party, or in Detroit, Michigan, if [Plaintiff] is the Complaining Party.

(IP Use Agreement, Doc. 9-2, Pg. ID 669.) The parties dispute who qualifies as the "complaining party" in this matter. (*Compare* Response, Doc. 20, Pg. ID 1048, *with* Suppl. Memorandum, Doc. 13, Pg. ID 997-1003; Reply, Doc. 21, Pg. ID 1281.) The American Arbitration Association has sent the parties a preliminary letter stating that the "arbitration clause calls for the hearing to be held in Cincinnati." (AAA Letter, Doc. 21-2, Pg. ID 1320.) Irrespective of the ultimate forum for arbitration, the Court need not wade into this question because the parties agreed that "arbitration shall not preclude *a Court* from granting interim equitable relief while the arbitration is pending." (IP Use Agreement, Doc. 9-2, Pg. ID 669 (emphasis added)).

Notably, under the integrated Transfer Agreement, the parties "consent[ed] to the jurisdiction of the Federal District Court for the Eastern District of Michigan (Detroit) and

the Federal District Court Southern District (Ohio) [sic] and they each waive[d] any objection to forum or venue and agree[d] to accept service of process by mail in any action arising out of this Agreement." (Transfer Agreement, Doc. 9-2, Pg. ID 689.) Given the unspecified nature of the phrase "a Court" and the fact that Defendant consented to suit here in the Southern District of Ohio, the Court will not transfer or dismiss this matter.

## II. Unclean Hands

Defendant further claims that Plaintiff should be precluded from obtaining equitable relief because Plaintiff itself has unclean hands. (Response, Doc. 20, Pg. ID 1049-50.) The doctrine of unclean hands permits courts "to deny injunctive relief where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995) (quotation omitted). That being said, unclean hands "must be established by clear, unequivocal and convincing evidence." *Hoover Transp. Servs., Inc. v. Frye*, 77 F. App'x 776, 784 (6th Cir. 2003) (quotation omitted) (explaining that "unclean hands are not to be lightly inferred"). Such unconscionable conduct must also have a sufficient connection to the matter in dispute. *See Cyber Sols. Int'l, LLC v. Pro Mktg. Sales, Inc.*, 634 F. App'x 557, 568 (6th Cir. 2016) ("This doctrine, however, does not grant courts free-floating authority to deny declaratory relief in all cases in which a party has engaged in misconduct.") In the trademark infringement context, the doctrine of unclean hands may preclude equitable relief to a plaintiff who procured or used the trademark in a deceptive or fraudulent manner. *See California Fig-Syrup Co. v. Frederic Stearns & Co.*, 73 F. 812, 817 (6th

Cir. 1896); *T. Marzetti Co. v. Roskam Baking Co.*, No. 2:09-CV-584, 2010 WL 793050, at *12 (S.D. Ohio Mar. 3, 2010); *Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1113 (S.D. Ohio 2011).

Defendant alleges that Plaintiff has unclean hands after Frisch's allowed sixty-four evictions of Big Boy restaurants in its territory, precipitated negative press concerning the Big Boy brand, and transferred assets to Plaintiff. (Response, Doc. 20, Pg. ID 1050.) Plaintiff responds that it is not responsible for the alleged acts of its predecessors, and, in any event, such alleged conduct fails to speak to the relevant issue here—opening restaurants under the Big Boy trademark in the other party's exclusive territory. (Reply, Doc. 21, Pg. ID 1282-84.)

The Court finds that there is not presently "clear, unequivocal and convincing evidence" on the record to conclude that Plaintiff itself has acted unconscionably or with unclean hands as related to this matter. *Hoover Transp. Servs., Inc*, 77 F. App'x at 784; *see also Bonner Farms, Ltd. v. Fritz*, 355 F. App'x 10, 17 (6th Cir. 2009) (cleaned up) ("[T]his rule does not require the plaintiff to be a saint in all of its affairs, but only that the plaintiff must not be guilty of reprehensible conduct with respect to the subject matter of its suit."). More directly, the Court does not find clear evidence that Plaintiff procured or used the trademarks in a deceptive or fraudulent manner. Thus, Plaintiff is not precluded from seeking equitable relief.

## III. Motion for Temporary Restraining Order

Federal Rule of Civil Procedure 65 empowers courts to issue temporary restraining orders. The purpose of such an order is to preserve the status quo pending a reasoned

resolution of the matter. *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). Courts consider four well-established factors when determining whether to grant or deny a temporary restraining order: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the [temporary restraining order]; (3) whether issuance of the [temporary restraining order] would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the [temporary restraining order]." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); *A&W X-Press, Inc. v. FCA US, LLC*, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. July 14, 2022). These are "factors to be balanced, not prerequisites that must be met." *Certified*, 511 F.3d at 542 (quotation omitted). The Court now considers each in turn.

### a. Likelihood of Success

Plaintiff brings claims for trademark infringement and unfair competition under the Lanham Act. (*See* Ver. Compl., Doc. 1, ¶¶ 69-80.) For purposes of a temporary restraining order, Plaintiff need only show a likelihood of success as to one of these claims. *See Brown v. Greene Cnty. Vocational Sch. Dist. Bd. of Educ.*, 717 F. Supp. 3d 689, 694 (S.D. Ohio 2024). Additionally, the analysis for an unfair competition claim mirrors that of a trademark infringement claim. *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1123 (6th Cir. 1996); *Too, Inc. v. TJX Companies, Inc.*, 229 F. Supp. 2d 825, 838 (S.D. Ohio 2002). The Court's analysis therefore begins and ends with Plaintiff's trademark infringement claim. "A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without

10

authorization, and (3) that the use of the alleged infringing trademark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *AWGI, LLC v. Atlas Trucking Co., LLC*, 998 F.3d 258, 264 (6th Cir. 2021) (quotations omitted).

### 1. Ownership

To start, Plaintiff has registered the trademarks in question with the United States Patent and Trademark Office. (Registrations, Doc. 9-2, Pg. ID 787-832.) This creates a presumption of validity, ownership, and the exclusive right to use the trademarks in commerce. *See* 15 U.S.C. § 1115(a). While this presumption is rebuttable, Defendant has not shown how this presumption has been overcome.

Defendant first argues that Plaintiff has failed to provide adequate evidence that it is the assignee of the relevant Big Boy trademarks. (Response, Doc. 20, Pg. ID 1051.) Plaintiff replied by attaching the assignments in question. Specifically, these documents show that Frisch's assigned the trademarks to Frisch's IP, LLC, who then assigned them to Plaintiff. (Assignments, Doc. 21-1, Pg. ID 1297-1301, 1308-1312.)

These assignments also address Defendant's second concern: that Plaintiff may have participated in an "assignment in gross" of the trademarks. (Response, Doc. 20, Pg. ID 1052.) To follow this argument, it helps to understand that a "trademark is a placeholder for the accumulated goodwill of a business." *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 846 (6th Cir. 2013). Accordingly, if a trademark is assigned without its associated goodwill, this is known as an invalid "assignment in gross" that fails to provide the assignee any rights. *Id.; see also* 15 U.S.C. § 1060(a)(1) ("A registered mark or

a mark for which an application to register has been filed shall be assignable with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark."). The proscription against "assignments in gross" has arisen from two sources: "(1) the fundamental nature of a trademark which is not a property right but only a right appurtenant to an established business or trade in connection with which the mark is employed; and, (2) the protection of the consuming public against confusion or deception." *Greenlon, Inc. of Cincinnati v. Greenlawn, Inc.*, 542 F. Supp. 890, 893 (S.D. Ohio 1982) (citations omitted). Here, Plaintiff's assignments included not only the trademarks themselves but also the accompanying goodwill. (Assignments, Doc. 21-1, Pg. ID 1297-1301, 1308-1312 (assigning the trademarks "together with the goodwill of the Business symbolized by the Marks")). Therefore, Defendant has not shown that Plaintiff holds an invalid "assignment in gross."

Defendant further contends that severing the trademark rights from direct operating rights violates the Agreements. (Response, Doc. 20, Pg. ID 1052.) Specifically, Defendant cites the following assignment clause: "each party may assign its interests under th[e] Agreement provided that any such assignee shall also be the owner of such party's interest in the Big Boy Rights." (IP Use Agreement, Doc. 9-2, Pg. ID 673.) However, as Plaintiff points out, the Agreements only define the "Big Boy Rights" as the particular trademarks. (Transfer Agreement, Doc. 9-2, Pg. ID 682, 691-94.) Considering the lineage of assignments to Plaintiff, it appears that Plaintiff has been assigned the "Big Boy Rights" as contemplated in the Agreements. Defendant has not pointed to language in the Agreements that an assignee itself must operate the restaurants within its territory.

12

(*Contra* IP Use Agreement, Doc. 9-2, Pg. ID 666 (referencing "the number of Big Boy restaurants operated by *or through* [Defendant] or [Plaintiff]) (emphasis added)). Plaintiff holds the trademarks for the restaurants currently operating in its territory—a practice which seems to have been similarly performed by its predecessors.

Lastly, Defendant argues that it has the right to intervene and operate Big Boy restaurants in Plaintiff's territory under the Agreements. (Response, Doc. 20, Pg. ID 1056-57.) Defendant cites a paragraph within the IP Use Agreement that speaks to the use of the Big Boy Rights. (*Id*.) This paragraph includes conditions on the parties' use of the trademarks, including to "maintain and operate all Big Boy restaurants in good condition and repair and in a proper business-like manner" and to "not permit gambling or other adult themes." (IP Use Agreement, Doc. 9-2, Pg. ID 665.) The Agreement then provides:

> Notwithstanding the foregoing, nothing herein shall be deemed to: (a) require [Plaintiff] or [Defendant] to operate in a manner which is dissimilar to their current Big Boy restaurant operations, or (b) preclude or restrict [Defendant] in the use, promotion and application of the Big Boy Rights (to restaurant operations or otherwise) that [Defendant] determines in its reasonable business judgement to be in its best interest.

(*Id*.)

Defendant maintains that this language allows it to use the Big Boy trademarks to operate restaurants in Plaintiff's territory as long as Defendant reasonably determines such action is within its best interest. (Response, Doc. 20, Pg. ID 1057.) In contrast, Plaintiff interprets this provision to include covenants—rather than conditions subsequent—pertaining to how each party may use the trademarks within its own territory. (Motion, Doc. 9, Pg. ID 531; Reply, Doc. 21, Pg. ID 1287.)

13

The Court finds Plaintiff's reading of this provision more convincing. As an initial matter, the parties entered the IP Use Agreement "to govern the use of the Big Boy Rights by [Plaintiff] and [Defendant] *in their respective areas.*" (IP Use Agreement, Doc. 9-2, Pg. ID 664 (emphasis added)). Additionally, given the introductory clause of "notwithstanding the foregoing, nothing herein shall be deemed," the provision in question appears to refer to the preceding use conditions in the parties' respective territories. This interpretation also finds support across the integrated Agreements. Defendant's predecessor conveyed to Plaintiff's predecessor "complete, absolute, perpetual and irrevocable ownership of the Big Boy Rights within [Plaintiff's territory]." (Transfer Agreement, Doc. 9-2, Pg. ID 683.) And, while the parties contracted to mandatory arbitration with the possibility for interim judicial relief, they specifically agreed that a party shall not "be entitled to relief which narrows the scope of the rights of the Breaching Party, under this Agreement, to use the Big Boy Rights." (IP Use Agreement, Doc. 9-2, Pg. ID 669.)

The parties' understanding of their rights and obligations was further solidified in 2007. In reference to these Agreements, Frisch's and Big Boy Restaurants International, LLC (Defendant's predecessor in interest) confirmed that Big Boy Restaurants International, LLC "will not use or advertise the Big Boy Trademark in . . . Frisch's Territory for Frisch's goods and services." (Use Agreement, Doc. 9-2, Pg. ID 723-24 (binding successors and assignees as well)). The parties may adjudicate alleged breaches of the Agreements in arbitration, but the Court does not find—for the limited scope of

14

present purposes—that Defendant's contractual arguments rebut Plaintiffs' ownership over the relevant trademarks.

For all these reasons, Plaintiff has sufficiently shown ownership over the trademarks in question.

### 2. Infringer Used the Trademark

It is undisputed that Defendant plans to open Big Boy restaurants in Plaintiff's territory this March. Plaintiff has also set forth evidence that Defendant has been advertising these restaurants under the Big Boy trademarks. For instance, Defendant has been seeking employees to fill positions at Big Boy restaurants in Plaintiff's territory. (Hashim Decl., Doc. 9-3, Pg. ID 870; Assistant Manager Posting, Doc. 9-3, Pg. ID 954; Shift Leader/Manager Posting, Doc. 9-3, Pg. ID 956.) Defendant does not contest this evidence. This second element of usage is therefore satisfied.

### 3. Likelihood to Confuse

"The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). Courts consider the following eight factors to determine whether the infringing mark will likely confuse consumers as to the origin of the goods: "(1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product

15

lines or services." *AWGI, LLC v. Atlas Trucking Co., LLC*, 998 F.3d 258, 264-65 (6th Cir. 2021). These factors are "simply a guide to help determine whether confusion is likely," and "a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Homeowners Grp. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991); *PACCAR Inc. v. TeleScan Techs., LLC*, 319 F.3d 243, 249-50 (6th Cir. 2003).

Defendant argues that these eight factors are only appliable after a court determines that an alleged infringer actually used the trademark. (Response, Doc. 20, Pg. ID 1055.) As explained, the record shows that Defendant has used the Big Boy trademarks to advertise its imminent opening of restaurants in Plaintiff's territory. The question therefore turns to the likelihood of confusion. Defendant has not contested the application of these factors.

### i. Strength of the Trademark

"The strength-of-the-mark factor focuses on the distinctiveness of a mark and its recognition among the public." *AWGI, LLC,* 998 F.3d at 265 (quotation omitted). Big Boy has become a strong and distinct trademark by continuously operating throughout Plaintiff's territory, as well as the nation, for decades. Defendant does not dispute this fact, and courts have consistently held the same. *See, e.g., Big Boy Rests. v. Cadillac Coffee Co.*, 238 F. Supp. 2d 866, 870-71 (E.D. Mich. 2002) (concluding that the Big Boy mark is "widely recognized in the [United States] and many foreign countries" and that "it is a distinctive and famous mark"); *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982) (presuming strong mark from defendant's "attempts

16

to implant in the public mind the idea that all of its restaurants are affiliated with the Big Boy mark"). This factor strongly suggests a likelihood of confusion.

###   ii.    Relatedness of the Goods or Services

"Services and goods are related not because they coexist in the same broad industry but are related if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *AWGI, LLC,* 998 F.3d at 266 (quoting *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.,* 502 F.3d 504, 516 (6th Cir. 2007)). As a rule of thumb, when the parties are directly competing with each other, confusion is likely when the trademarks are sufficiently similar. *See id*. Here, the goods and services are highly related because it appears that Defendant intends to open restaurants with similar products and services as the Frisch's Big Boys currently operating within Plaintiff's territory. (*See* Cory Decl., Doc. 9-4, Pg. ID 981.) This factor favors a finding of likely confusion.

###   iii.    Similarity of the Trademarks

Courts give "considerable weight" to the similarity of the trademarks in dispute. *Daddy's Junky Music Stores, Inc.,* 109 F.3d at 283. The trademarks in question in this case are identical. Plaintiff and Defendant hold concurrent use rights over the same trademarks in their respective territories. This similarity creates a high likelihood for confusion when used in the same geographic territory. *See Red Roof Franchising, LLC v. Riverside Macon Grp., LLC,* No. 2:18-CV-16, 2018 WL 558954, at *2 (S.D. Ohio Jan. 25, 2018)

(explaining that "a high probability of confusion exists because the marks are not merely similar [but] are identical"). This factor reinforces a finding of likely confusion.

    iv.    **Evidence of Actual Confusion**

    Though evidence of actual confusion is often considered "the best evidence of likelihood of confusion," this factor is not always particularly pertinent. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 284. "Due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant, and the factor of actual confusion is weighted heavily only when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have been available." *Id.* (quotation omitted); *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 572 (6th Cir. 1987) (giving less weight to this factor when "there has been no real opportunity for actual confusion"). Plaintiff suggests that there may already be public confusion as to the ownership of the restaurants that Defendant is advertising as Big Boy in Plaintiff's territory. (Motion, Doc. 9-1, Pg. ID 536.) The Court does not find this factor to be especially salient given the current circumstances and posture of this case.

    v.    **Marketing Channels Used**

    In considering the marketing channels, courts examine "how and to whom the respective goods or services of the parties are sold." *Leelanau*, 502 F.3d at 519. The likelihood of confusion involves weighing whether: "(1) the goods are sold through different avenues; (2) the parties have different customers; and (3) they market their goods or services in different ways." *AWGI, LLC*, 998 F.3d at 267. Plaintiff notes that Defendant uses similar channels in advertising and through its online presence. (Motion,

Doc. 9-1, Pg. ID 536.) The IP Use Agreement also includes a provision that restaurants must include Big Boy signage. (IP Use Agreement, Doc. 9-2, Pg. ID 665.) And, finally, it is evident that Defendant is targeting the same customers because it is seeking to expand into Plaintiff's territory. Thus, this factor cuts in favor of finding a likelihood of confusion.

      **vi.    Likely Degree of Consumer Care**

    Courts presume customers typically exercise ordinary caution but that customers use a higher degree of care when the goods or services are expensive or unusual. *AWGI, LLC*, 998 F.3d at 267. "The casual 'degree of purchaser care' in selecting fast-food restaurants," according to the Sixth Circuit, "supports a conclusion of likelihood of confusion." *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982) (explaining that such purchases are "not likely to be the object of intensive consumer research"); *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 285 (finding the same). Courts have applied similar reasoning to relatively "causal" food purchases. *See, e.g., La Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine, Inc.*, 295 F. Supp. 3d 756, 769 (W.D. Ky. 2018). This factor contributes towards a showing of likely consumer confusion.

      **vii.    Defendant's Intent in Selecting the Mark**

    This factor considers whether a defendant "intend[ed] to benefit from the other mark's recognition." *AWGI, LLC*, 998 F.3d at 268 (quotation omitted). Evidence that a defendant knew of the plaintiff's trademark and its belief that using the trademark would divert business away from the plaintiff may demonstrate such intent. *Kibler v. Hall*, 843 F.3d 1068, 1081 (6th Cir. 2016). It is apparent that Defendant was aware of the geographical boundaries of the trademarks in question as articulated in the Agreements

19

and filings with the United States Patent and Trademark Office. By using the Big Boy trademark in Plaintiff's territory, Defendant has demonstrated an intent to take advantage of the trademark's long history of recognition in this market. This factor points towards a likelihood of consumer confusion. And, even if Defendant lacked such intent, this factor would at the very least remain neutral. *See id.* (explaining that "a lack of intent has no effect on the determination of likelihood of confusion").

      viii.   **Likelihood of Expansion**

"A strong possibility that either party will expand its business to compete with the other's increases the likelihood of consumers confusing the sources of the parties' products." *Kibler*, 843 F.3d at 1082. Extended analysis is unnecessary on this point since this dispute centers around Defendant expanding beyond its territory to advertise and open Big Boy restaurants in Plaintiff's territory. This final factor therefore further supports a finding of likely consumer confusion.

*    *    *

Considering these factors in the collective, the Court concludes that Defendant's "use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc.,* 109 F.3d at 280. Plaintiff has therefore satisfied each element of a trademark infringement claim against Defendant and is likely to succeed on the merits.

      **b.  Irreparable Harm**

As Plaintiff has established a likelihood of success on the merits of its trademark infringement claim, it is entitled to a rebuttable presumption of irreparable harm. *See* 15

20

U.S.C. § 1116(a). This statutory presumption accounts for the unique nature of trademarks and the difficulty in calculating the cost of their infringement. *See Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991) (quotation omitted) ("[I]rreparable injury flows both from the potential difficulty of proof of plaintiff's damages, and also from the impairment of intangible values."); *CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 596 (6th Cir. 2015) (quotation omitted) (explaining that irreparable harm follows a plaintiff's showing "that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither calculable nor precisely compensable").

In addition to this presumption of irreparable harm, Plaintiff also argues that there is a significant risk that it may lose its concurrent trademark registration if Defendant uses the trademark in Plaintiff's territory. (Motion, Doc. 9-1, Pg. ID 539.) *See also Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 651 (6th Cir. 1982) (explaining that plaintiff showed irreparable harm since it had a substantial interest in its exclusive use of the Big Boy trademark and had spent extensive efforts to promote its trademark in the area).

Defendant counters that Plaintiff has failed to demonstrate irreparable harm because Plaintiff's predecessor in interest had already caused significant harm to the trademark, and it is unclear how Plaintiff may use the trademark moving forward. (Response, Doc. 20, Pg. ID 1057.) Defendant does not provide authority for the proposition that it is entitled to use the trademark in Plaintiff's territory by alleging that Plaintiff's predecessor previously tarnished the trademark's reputation. Furthermore,

21

Plaintiff's franchisees and licensees currently operate thirty-one restaurants with the Big Boy trademark in Plaintiff's territory. (Hashim Decl., Doc. 9-3, Pg. ID 872-73; Frisch's Locations, Doc. 9-3, Pg. ID 974.) Defendant's operation in Plaintiff's territory would therefore likely cause consumer confusion and impact Plaintiff's intangible reputation. Thus, Plaintiff is likely to suffer irreparable harm if the status quo is not preserved.

### c. Substantial Harm to Others

The Court next considers the harm to others caused by a temporary restraining order. Plaintiff argues that any harm to Defendant is of its own willful making. (Motion, Doc. 9-1, Pg. ID 540.) Courts routinely discount harm to a defendant when there is evidence that the defendant placed itself in such a position by knowingly infringing the plaintiff's trademark. *See, e.g., Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006) (explaining that the "harm" suffered by a trademark infringer is "hardly a legally cognizable one"); *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1461 (S.D. Ohio 1990) (similar); *Hydrojug, Inc. v. Five Below, Inc.*, 625 F. Supp. 3d 684, 717 (N.D. Ohio 2022) (qualifying such harm as "self-inflicted").

The Court recognizes Defendant's assertion that injunctive relief may harm its employees and consumers. (Response, Doc. 20, Pg. ID 1059.) But, as identified by Plaintiff, there is nothing to prevent Defendant from opening restaurants under a different, non-trademarked name. *See Red Roof Franchising, LLC v. Riverside Macon Grp., LLC*, No. 2:18-CV-16, 2018 WL 558954, at *3 (S.D. Ohio Jan. 25, 2018) (acknowledging that defendant may still operate the hotel in question—just not under the trademarked name). Thus, given Defendant's willful actions and the possibility of mitigating harm by operating in

22

other ways, the potential harm to others does not preclude the relief sought here.

### d. Public Interest

The public interest is served by preventing consumer confusion and enforcing contractual duties. *See Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007). After all, "the general public is a key beneficiary of the federal trademark system because the federal trademark system has a great interest in administration of the trademark law in a manner that protects against confusion." *Hydrojug, Inc. v. Five Below, Inc.*, 625 F. Supp. 3d 684, 717 (N.D. Ohio 2022) (quotation omitted). In light of the preceding analysis, the Court finds that a temporary restraining order will preserve the status quo, prevent consumer confusion, and respect the parties' bargained-for territories of trademark usage. Such relief is within the public interest.

\*        \*        \*

As such, and after thorough consideration, each of the four factors support granting Plaintiff's Amended Motion for Temporary Restraining Order. The Court therefore finds it appropriate to grant limited injunctive relief to preserve the status quo pending arbitration in this matter.

### e. Security

The Sixth Circuit directs district courts to expressly address the question of whether a bond is required as security for temporary restraining orders and preliminary injunctions. *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978). Federal Rule of Civil Procedure 65(c) requires that the moving party give security in an amount

that the court considers proper "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." That being said, district courts have broad discretion in determining that amount or whether bond is needed at all. *Molton Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995); *see also Ohio State Univ. v. Thomas*, 738 F. Supp. 2d 743, 757 (S.D. Ohio 2010) (declining to impose bond after considering, among other things, that all four factors weighed in favor of injunctive relief).

Plaintiff argues that the Court should exercise its discretion in not imposing bond. (Motion, Doc. 9-1, Pg. ID 541.) And notably, Defendant does not contest the issue of security. In light of the foregoing analysis and the indistinct harm to Defendant, the Court determines that Plaintiff need not post bond at this time.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's Amended Motion for Temporary Restraining Order (Doc. 9) and **ORDERS** the following:

1.  Defendant, its respective agents, employees, and those acting in active concert with Defendant shall be **ENJOINED** from:

    a.  Using any of Plaintiff's Big Boy Marks or any trademark, service mark, trade name, or logo that is confusingly similar to Plaintiff's Big Boy Marks, within Plaintiff's Territory. Plaintiff's Big Boy Marks include the following Registration Numbers:

        - 5,373,176
        - 5,984,556

24

- 5,373,175

- 5,421,398

- 6,615,727

- 6,010,714

- 5,373,179

- 6,348,451

- 3,690,889

- 4,026,143

b. Causing a likelihood of confusion or misunderstanding as to its affiliation, connection, or association with Plaintiff, its franchisees or licensees, or with any of the products and services offered by them within Plaintiff's Territory;

c. Unfairly competing with Plaintiff or its franchisees or licensees within Plaintiff's Territory; and

d. Otherwise infringing Plaintiff's Big Boy Marks or using any similar designation, alone or in combination with any other components, within Plaintiff's Territory.

2. Subject to further orders by this Court, this Order shall expire on the 14th day following its entry on the docket. The Court will address Plaintiff's Motion for Preliminary Injunction (Doc. 9) in due course.

**IT IS SO ORDERED.**       **Date/Time: March 7, 2025 at 1:15 PM**

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND